## SUTHERLAND PAPER CO. et al. v. MICHIGAN CARTON CO.

(District Court, E. D. Michigan, S. D. July 21, 1926.)

No. 857.

1. Patents ⚙︎328—Sutherland, 1,316,120, claim 10, and No. 1,359,546, claims 10 and 11, for machines for sealing waxed cartons, held not infringed.

In the Sutherland patents, No. 1,316,120, claim 10, and No. 1,359,546, claims 10 and 11. Each for machine for sealing waxed cartons, are in reality for an aggregation of two unrelated machines, having different functions, one to remove the paraffin from the edge of the waxed blanks, and the other for gluing the edges together to make the completed cartons; and such claims are not infringed by two separate machines to carry out the two operations, used at different times and places.

2. Patents ⚙︎328.

The Sutherland patent, No. 1,316,120, claim 13, for method of sealing waxed cartons, *held* void for anticipation.

3. Patents ⚙︎328—Sutherland, 1,359,546, claim 12, for method of sealing waxed cartons, held valid and infringed.

The Sutherland patent, No. 1,359,546, claim 12, for method of sealing waxed cartons in providing for the removal of the wax by means of heated plates contacting with the particular surface to be glued, discloses a novel and useful process; also *held* infringed.

In Equity. Patent infringement suit by the Sutherland Paper Company and the Menasha Printing & Carton Company against the Michigan Carton Company. Decree for complainants on one claim of patents involved and for defendant on all other claims.

Otis A. Earl, of Kalamazoo, Mich., and Dwight B. Cheever, of Chicago, Ill., for plaintiffs.

George A. Rockwell, of Boston, Mass., for defendant.

TUTTLE, District Judge. This is a patent suit based upon claims 10 and 13 of patent to Sutherland, No. 1,316,120, dated September 16, 1919, and upon claims 10, 11, and 12 of patent to Sutherland, No. 1,359,546, dated November 23, 1920. These claims are as follows:

Patent 1,316,120, claim 10:

"In a machine for sealing waxed cartons the combination of a carton conveying means, means for heating the surfaces adapted to be glued together, removing or driving off of a substantial portion of the wax thereon, and means for applying glue and folding the carton."

Patent, 1,316,120, claim 13:

"The method of sealing waxed cartons consisting of heating the surfaces to be glued together, removing a substantial portion of the wax, applying glue thereto, and pressing such surfaces together."

Patent 1,359,546, claim 10:

"In a machine for sealing waxed cartons, the combination of a carton conveying means, means for heating the surfaces to be glued together to soften the wax comprising the heating plates across which such portions of cartons are carried, and means for applying the glue and folding the cartons."

Patent 1,359,546, claim 11:

"In a machine for sealing waxed cartons, the combination of a carton conveying means, means for removing or driving off a substantial portion of the wax from the surfaces to be glued together comprising heating plates

with which such surfaces are brought into contact, and means for applying the glue and folding the cartons."

Patent 1,359,546, claim 12:

"The method of sealing waxed cartons consisting of removing or driving off a substantial portion of the wax from the surfaces to be glued together by contacting with heating plates, applying glue thereto, and pressing such surfaces together."

Defendant contends that all of these claims in suit are invalid, and further contends that, even though held valid, defendant does not infringe.

[1] These two patents cover machinery and methods which, when properly used, produce glued, high-class, paraffin-coated cartons, now generally used as containers for the distribution of food products like butter, lard, oleomargarine and ice cream. The most serviceable and desirable cartons are made from paper which is highly glossed with paraffin wax, folded in such a way that the overlapping edge is glued and held firmly in position. The paraffin wax makes the container very desirable for the purpose of keeping out dirt, insects, and to a large extent excluding the air and anything which may be circulating in the air. The glue at the edge of the overlapping flap holds the edge firmly so that strength is given to the package. Prior to the patent in suit it was old and well known that a package of this kind could be made with a dull finish to the paraffin wax. It should be kept in mind that glue will not adhere to the paraffin. In making the dull finish, machinery was used which puts the wax on from a roller. The carton blank which had been cut out in proper form to make the carton when folded was passed by the roll so positioned that the dull finish wax was applied to the entire surface of the paper except the narrow edge at the two surfaces which were to be glued together. In order to obtain the glossy surface to the paraffin wax, the paper must be dipped into a bath of the hot paraffin. The necessary result of obtaining the coating to the paper in this way is that the entire surface of the paper is covered with the paraffin wax. It was old to obtain the glossy surface in this way prior to the Sutherland patent in suit, and cartons had been made from the glossy paraffin paper. Some of these had been held together by simply heating the paraffin and then allowing it to cool, so that the overlapped seam would stay in position by the tensile strength of the paraffin. Paraffin does not possess much tensile strength, and therefore the package held together in this manner was not strong. Others were held in position by means of an extra flap. This required special machinery, and left the side unsealed. The record discloses no prior art instance in which the high-class cartons were glued at the edges. At Ashland, Ohio, and as early as 1909, dull-finished cartons were dewaxed and glued. After the blanks had been cut out in the right form to make the cartons, they were paraffined with a roller on one side, giving them the dull coating, then bundles of these blanks were stood on their several edges upon a hot plate which caused the paraffin at that particular edge of the blank to run off. This work of placing the blanks on the hot plate was done by hand, but in large quantities and with considerable success. Only one side of these blanks was covered with the paraffin wax, and therefore it was only necessary to remove the paraffin wax from one of the edges, because when the carton was completed this particular edge of the blank came in contact with the other side of the blank which bore no paraffin, and therefore the glue was able to stick the two edges together. If both the inside and outside of the carton were to be prepared, the Ashland method would not work successfully, because by that method the heat would necessarily remove the paraffin from both sides of the edge heated. While it was possible to do the work in this way where the carton was paraffined only on the inside, it was really not a very satisfactory way. It was done by hand, and it was done for the individual use of the parties employing the method. I am satisfied that a commercial article which would be desirable for the use of various kinds of food products, and which could be sold to the distributors of food products, would not be produced by that old method. What Sutherland did in his first patent was to make a machine which would, through the use of steam jets, melt the paraffin which was to be removed at the edge of the blank, and, through the heat and force of the steam, melt and blow it off from the underlying paper so that the surface of the paper was sufficiently bared to permit the edges so relieved of paraffin to be stuck together with the glue. In the second patent, Sutherland accomplishes the same result by passing that portion of the blank from which it is desired to remove the paraffin wax over a hot plate. Sutherland in his machine not only removed the paraffin wax from the edge of the blank, but also applied the glue, folded the carton, brought the edges so glued in contact with each other and held them in position until the glue had set. It seems to me quite plain that the work of removing the paraffin is an entirely separate operation so far as mechanics is concerned,

from the operation of applying the glue and bringing the parts together so that the glue will set. While it might be convenient in some factories to bring the two operations closely together in matter of time and matter of place, it is not necessary to do it in that way. The wax might be removed in one city on one day, and the gluing might be performed in another city many months thereafter without interfering in any way with the actual mechanical result. From the testimony in the case, and from a careful examination of the specifications and drawings of these two patents, I reach the conclusion that Sutherland really has two separate and distinct operations, and that, while it may be called one machine, it is really two machines performing these two distinct and separate services, and that the two separate and distinct operations are not mechanically. related to each other so far as the way in which they function. Claim 10 of the first patent in suit and claims 10 and 11 of the second patent in suit are upon the machines. These claims are, in my opinion, for an aggregation of two machines rather than for a patentable combination in one machine. I am of the opinion that they ought to be held void on that account, but I do not think the defendant's structures make it necessary for me to go to that extent in this case. The defendant actually performs this work in two different rooms by two separate and distinct machines. Neither is the work as done by the defendant closely related in matter of time. The wax is removed in one room by one machine, and a large supply of these blanks ready for use in making cartons is kept on hand. When the defendant is in need of cartons and wishes to actually complete the work of manufacturing the cartons, these blanks so prepared are taken to another room, and there, at a different time and with another machine, they are glued and fastened together. The work is so separate and distinct that one firm might be engaged in one of these operations and a separate and distinct corporation might be engaged in doing the other work. If that were the situation, then I should not be able to read either one of these claims upon the machine in use by either party. In other words, only a portion of the combination contained in any one of these three machine claims in suit will read upon any one of the separate structures used by the defendant. I therefore dispose of the three claims here in suit which are for the machines by holding them to be not infringed.

[2] Claim 13 of the first patent in suit is a process claim. This claim was evidently prepared and allowed without knowing of the method pursued at Ashland. Sutherland attempts to claim any process for sealing waxed cartons in which a portion of the wax is removed by heat, glue is applied to the portion from which the wax has been removed, and the flap so glued brought into position, and the carton completed. It is so broad that it reads directly on the process pursued at Ashland. Therefore this claim must be held void.

[3] The only remaining claim is claim 12 of the second patent in suit. This is also for a process, and it narrows the process to removing the wax by means of heated plates contacting with the particular surface to be glued. This was new; no one had ever done this prior to Sutherland. It was very useful. By the old method of simply heating the edge of the waxed blank by holding it on something hot or near something hot, one could not remove the wax in a proper way for commercial use. At the edge which was nearest to the heat all the wax would be taken off, and then, of necessity, there would finally come a twilight zone, grading off to the place where none of the wax was melted off. This would not leave the surface in a satisfactory. condition to apply glue and then stick the edges together. With the Ashland method it was necessary either to leave a margin outside the flap from which the paraffin had been partly removed, or, if the flap extended over the twilight zone, then the extreme edge would not be firmly glued, and the package would be weakened. The iron plate can be applied to the exact surface which is later to be covered with glue. This can be accurately and definitely determined. The paraffin can be removed to the extent desired. It is workable, practical, and satisfactory. It is a real step forward in the art, and therefore my duty to hold this claim valid. There is no question as to infringement, because the defendant follows exactly the process described in this claim. Upon this question of infringement it is urged by the defendant that the patent in suit contemplated that the gluing should be done immediately following the removal of the wax. There was nothing in the art which required this claim to be so limited, and there is nothing in the claim which indicates any intenton to so limit. It would be unfair to the claim and to the patent for the court to read into this claim something which is not there, and then hold that the claim was not infringed because the defendant had not done the particular thing which the court had read into the claim. I take the claim as I find it, give to it the usual fair meaning of the words employed, and find that the defendant

has infringed. While this court holds with defendant as to four of these claims and with plaintiff as to only the process claim of the second patent, full costs should be taxed by plaintiff, for the reason that little or no additional trouble or expense was caused by including the other four claims in the bill of complaint. The facts of this case are such that not one single witness was made necessary by the four claims in question, and I discover no paragraph in any of the testimony which could safely have been omitted if the suit had originally been based on only the one claim here held valid and infringed.

An interlocutory decree will be entered holding the machine claims not infringed, claim 13 of the first patent invalid, and claim 12 of patent 1,359,546 valid and infringed. A reference will be made to William S. Sayres, Jr., master of this court, to determine the usual profits and damages. The decree will carry with it the usual injunction and costs.